UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80293-CIV-MARRA/JOHNSON

HEALTHCARE APPRAISERS,
INC., a Florida corporation,

       Plaintiff

vs.

HEALTHCARE FMV ADVISORS,
LLC, a Colorado limited liability
company; and KAREN BAIRSTOW,
an individual,

       Defendant.

_____/

## ORDER AND OPINION DENYING MOTIONS TO DISMISS

THIS CAUSE is before the Court upon Healthcare FMV Advisors, LLC's Motion to

Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction, Forum Non-Conveniens,

and Violating Rules of Pleading [DE 14], Karen Bairstow's Motion to Dismiss Complaint

[DE 15], and Plaintiff's Motion for Leave to File a Brief Sur-Reply to Defendants' Reply

Memorandums [DE 30].  The motions are fully briefed and ripe for review.  The Court

has carefully considered all the filings and is otherwise fully advised in the premises.

## Introduction and Allegations

This is an action for trademark infringement, false advertising, false

designation of origin, deceptive acts and practices, misappropriation of trade secrets,

and breach of a confidentiality, non-competition and non-solicitation agreement.

The facts are taken largely from Plaintiff's Complaint and the documents attached

thereto, which the Court assumes true for the purposes of this Order.

Plaintiff HealthCare Appraisers, Inc. ("Plaintiff" or "Appraisers") is a Florida corporation with its corporate headquarters located in Delray Beach, Florida and with offices in Chicago, Dallas and Denver.  Defendant Healthcare FMV Advisors, LLC, ("Advisors") is a limited liability corporation organized and existing under the laws of the State of Colorado with its corporate address in Denver, Colorado.  Compl. ¶ 5. Defendant Karen Bairstow ("Bairstow") (together with Advisors, "Defendants") is an individual who is domiciled in the State of Colorado.  Compl. ¶ 6.

According to the complaint, Plaintiff Appraisers was established on February 1, 2000, and is a nationally recognized, pre-eminent expert in healthcare valuation and consulting services with a nationwide presence.  Plaintiff services exclusively the healthcare and life sciences industries.  Compl. ¶7.  Plaintiff provides, among other things, financial and fair market value opinions for healthcare facilities and practices, and litigation support services such as expert and damages assessments.  Compl. ¶8. Plaintiff serves the nation's premier healthcare organizations in virtually every state in the United States.  Plaintiff's clients include hospital and healthcare systems, pharmaceutical and medical device manufacturers, diagnostic and treatment companies, managed care organizations, healthcare lenders and investors, physicians and physician group practices, and nursing homes and long-term care facilities. Compl. ¶9.  Since its inception in 2000, Plaintiff has established its client relationships through integrity, trust, and the delivery of high-quality, independent,

reliable and objective advice, work products and services.  Compl. ¶1.

Plaintiff is the owner of U.S. Trademark Registration service mark "HEALTHCARE APPRAISERS," and "HEALTHCARE APPRAISERS INCORPORATED and design."  Compl. ¶4.  As an integral part of its business, Plaintiff has developed and utilized unique and proprietary valuation processes and methods, pricing and competitive strategies that are maintained in strict confidentiality and constitute Plaintiff's protectable trade secrets.  Among its many efforts to maintain the confidential nature of its trade secrets, Plaintiff consistently requires the execution of written confidentiality agreements by those entering into a business relationship with it, including its employees.  By ensuring that its trade secrets remain highly confidential, Plaintiff has established a competitive edge in the marketplace.  Compl. ¶11.

On or about April 14, 2006, Plaintiff hired Bairstow in the position of a Senior Associate.  As a Senior Associate, Bairstow assisted Plaintiff in the fair market value analysis of transactions, and preparation of fair market value reports concerning the same transactions for many of Plaintiff's clients.  On or about June 11, 2008, Bairstow's employment with Plaintiff ended.  Compl. ¶17.

During the course of her employment, Bairstow became aware of the identity of Plaintiff's pre-existing clients and established and maintained relationships with a number of these clients.  Compl. ¶18.  In addition, during the course of her employment, Bairstow was afforded access to Plaintiff's confidential trade secret

information, including Plaintiff's valuation processes and methods, pricing and competitive strategies.  Bairstow regularly utilized this information in fulfilling her employment duties.  Compl. ¶19.

To protect Plaintiff's intellectual property and the confidentiality of its proprietary trade secret information, and to preserve the legitimate business interests and goodwill of Plaintiff, Bairstow executed a Confidentiality, Non-Competition and Non-Solicitation Agreement ("Agreement") on or about April 3, 2006.  The Agreement was part of Plaintiff's standard administrative policies and a condition of Bairstow's employment with Plaintiff.  Compl. ¶20.  Section 2(a) of the Agreement provides that all Confidential Information[1] and Confidential Documents[2]

---

[1] Confidential Information is defined as: all information whether written or oral, tangible or intangible, of a private, secret, proprietary or confidential nature, of or concerning the Company, its clients, and its business and operations, including without limitation, any trade secrets or know how, computer software programs in both source code and object code form (including without limitation, Programs (as hereinafter defined) and any rights relating thereto, information relating to any product (whether actual or proposed), development (including any improvement, advertisement or modification thereto), technology, technique, process or methodology, any sales, promotional or marketing plans, programs, techniques, practices, or strategies, any expansion plans (including existing and entry into new geographic and/or product markets), any operational and management guidelines, any corporate and commercial policies, any cost, pricing or other financial data or projections, client lists, the identity and background of any customers, prospect or supplier, and any other information which is to be treated as confidential because of any duty of confidentiality owed by the Company to a third party or any other information that the Company shall, in the ordinary course of business, possess or use and not release externally without restriction on use or disclosure.  DE 1-3, Ex. C ¶1(B).

[2] Confidential Documents are defined as all files, letters, memoranda, reports, records, computer disks or other computer storage medium, data, models, or any

are and shall remain the exclusive property of Plaintiff, and that no course of conduct between Plaintiff and Bairstow shall be deemed to grant Bairstow any rights in or to all or any portion of the Confidential Information or Confidential Documents.  Compl. ¶21.  The Agreement is governed by Florida law, and any action, suit or proceeding arising out of or relative to the Agreement or the relationship of Bairstow and Plaintiff may be instituted only in the state or federal courts located in Palm Beach County, Florida.  Compl. ¶27.

On or about June 19, 2009, approximately one year after Bairstow's employment with Plaintiff ended, Plaintiff discovered the website, www.healthcarefmvadvisors.com.  This website was registered on December 1, 2008, and is being maintained by or on behalf of Bairstow.  Compl. ¶30.  Plaintiff learned that on January 7, 2009, Bairstow had formed a limited liability corporation in the State of Colorado titled "Healthcare FMV Advisors, LLC" and that Bairstow was a founder and managing partner of this corporation.  Compl. ¶31.  Advisors provides services identical to those provided by Plaintiff, such as providing fair market value opinions to the healthcare and life sciences industries, and other consulting and recommendation services.  Compl. ¶32.

---

photographic or tangible materials containing Confidential Information (as hereinafter defined), whether created by the Company, its clients, the Employee or any other party, and all copies, excerpts and summaries thereof which shall come into the custody or possession of the Employee.  DE 1-3, Ex. C ¶1(a).

Through the www.healthcarefmvadvisors.com website and Advisors, Bairstow is
actively marketing services nearly identical to those offered by Plaintiff in the highly
specialized market in which Plaintiff operates, in direct competition with Plaintiff.
Compl. ¶33.  Bairstow's use of the name "HEALTHCARE FMV ADVISORS," which
Plaintiff claims is substantially similar to Plaintiff's HEALTHCARE APPRAISERS Word
Mark and Logo Mark; Bairstow's use of the website www.healthcarefmvadvisors.com,,
which encompasses all of Plaintiff's domain name, www.healthcarefmv.com., and
Bairstow's providing Fair Market Value opinions and consultation services to
healthcare and life sciences organizations on a nationwide basis, is, in part, the basis
of the instant lawsuit.  *See, e.g.,* Compl. ¶35.

Plaintiff's Complaint alleges five causes of action against Defendants including:
federal unfair competition, false advertising and false designation of origin in
violation of the Lanham Act, 15 U.S.C. §1125(a), [Count I, Compl., ¶¶ 1-47]; federal
trademark infringement in violation of the Lanham Act, 15 U.S.C. §1114, [Count II,
Compl. ¶¶ 1-52]; common law service mark infringement and unfair competition
[Count III, Compl. ¶¶ 1-57]; misappropriation of trade secrets in violation of Florida's
Uniform Trade Secrets Act [Count IV, Compl., ¶¶ 1-68]; and unjust enrichment,
[Count V, Compl., ¶¶ 1-73].  Against Bairstow alone, the Complaint alleges a count for
breach of contract and covenant not to compete [Count VI, Compl., ¶¶ 1-77].

Defendants move to dismiss the Complaint for the following reasons:  (1) lack

of personal jurisdiction; (2) forum non-conveniens; (3) the Complaint constitutes a shotgun pleading; and (4) for a more definite statement regarding the trade secrets Defendants are purportedly misappropriating.  Bairstow independently argues that the Complaint must be dismissed due to Plaintiff's inability to join a necessary party, and that the unjust enrichment claim must fail because it is preempted by Florida's Trade Secret Act.

**Standard of Review**

For purposes of deciding a motion to dismiss, the Court accepts the allegations of the Complaint as true and views the facts in the light most favorable to it.  *See, e.g.*, *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000).  A plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1950, (2009)).  "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting

*In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981)).

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of pleading enough facts to make out a *prima facie* case for personal jurisdiction. *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *Polski Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986). The burden then shifts to the defendant to challenge the plaintiff's allegations by affidavits, documentary evidence, or testimony. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). If the defendant does so, the burden shifts back to the plaintiff to prove personal jurisdiction by affidavits, documentary evidence, or testimony. *Id.*

An evidentiary hearing on a motion to dismiss for lack of personal jurisdiction is discretionary but not mandatory. *See, e.g.*, *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1504 (11th Cir. 1984). Because the parties did not request an evidentiary hearing, the Court exercises its discretion not to conduct one.

## Discussion

I.    **Personal Jurisdiction**

The Court must conduct a two-prong inquiry to determine whether Advisors and Bairstow, non-resident defendants, are subject to jurisdiction in Florida. First, the court must "determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Horizon Aggressive Growth, L.P. v. Rothstein-*

*Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005).  Second, the court must "examine whether the exercise of personal jurisdiction over Defendants would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that they have minimum contacts with the forum state and that the exercise of jurisdiction over them does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Among other provisions, the Florida long-arm statute permits the state's courts to exercise jurisdiction over nonresident defendants who commit certain specific acts.  Fla. Stat. § 48.193.  For example, § (1)(b) of the statute permits a Florida court to assert jurisdiction over any person who "commit[s] a tortious act within this state."  Fla. Stat. § 48.193(1)(b).[3]  Indeed § 48.193(b) of the Florida long-arm statute even permits personal jurisdiction over a nonresident defendant alleged to have committed a tort *outside* of the state when that tort causes injury *inside* the state. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999); *Alexander Proudfoot Co. World Headquarters v. Thayer,* 877 F.2d 912, 921 (11th Cir. 1989).  Plaintiff asserts that specific personal jurisdiction[4] over Defendants is established under this

---

[3]  "Because the construction and application of the Florida Long-Arm statute is a question of Florida law, [federal courts] are required to construe the Long-Arm provisions as would the Florida Supreme Court." *Horizon Aggressive Growth*, 421 F.3d at 1166-67.

[4]  Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum.  *See McGow v. McCurry*, 412

section of the Florida statute.  As "[e]ach defendant's contacts with the forum State must be assessed individually," the Court begins by examining the injury Bairstow is alleged to have committed in Florida.  *Calder v. Jones*, 465 U.S. 783, 790 (1984).

**Defendant Bairstow**

A.    *Long Arm Statute*

As mentioned previously, Bairstow executed a Confidentiality, Non-Competition and Non-Solicitation Agreement with Plaintiff that contained a forum selection clause which identified Palm Beach County, Florida as the only forum where any action could be instituted or maintained.  Compl. ¶27.  Indeed, the forum selection clause included a waiver which stated, "[e]ach party hereto agrees to waive any challenge to the personal jurisdiction of, or venue in, such courts."  DE 1-3 at 16, Ex. C at §7.  But in order to bring a nonresident into our courts, Florida has held that in addition to a forum clause, there must be some independent basis for state jurisdiction.  *McRae v. J.D./M.D., Inc.*, 511 So.2d 540, 544 (Fla. 1987) (while "a contractual choice of forum clause designating Florida as the forum cannot serve as the sole basis for asserting in personam jurisdiction," such a clause may be a factor

_____

F.3d 1207, 1214 (11th Cir. 2005).  This contrasts with "general jurisdiction," which refers to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985); *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002).

"when there exists an independent basis for a Florida court to assert jurisdiction").

In *Desai Patel Sharma, Ltd v. Don Bell Industries, Inc.*, the additional basis was

defendant's breach of contract in Florida by failing to make the required payments

here.  729 So.2d 453, 454 (Fla. Dist. Ct. App. 1999).

Natural persons, as well as corporations, may be liable for trademark

infringement under the Lanham Act.  *See Mead Johnson & Co. v. Baby's Formula*

*Serv., Inc.*, 402 F.2d 19 (5th Cir. 1968); 15 U.S.C.A. §§ 1114 & 1127.  Because of its

very nature a corporation can act only through individuals.  "Obviously ... if there

was an infringement by the corporation, this infringement was caused by some one or

more persons either officers or employees of the corporation who caused the acts to

be done."  *Mead Johnson*, 402 F.2d at 23.  If an individual actively and knowingly

caused the infringement, she is personally liable.  *Chanel, Inc. v. Italian Activewear*

*of Fla., Inc.*, 931 F.2d 1472, 1477-78 (11th Cir. 1991).  Applying this standard to

Barstow, the Court has personal jurisdiction over her if it is alleged that she engaged

in, for example, trademark infringement by virtue of her company's website  and

thereby caused injury to Plaintiff in Florida; *see also*, *Cash4Gold, LLC v. C.J.*

*Environmental, Inc.*, 2009 WL 1605354, *1 (S.D. Fla. June 8, 2009) (personal

jurisdiction found to exist over person who engaged in trademark violations by virtue

of the websites challenged in the Complaint and thereby caused injury to Florida

plaintiff).  This is indeed alleged here.  *See* ¶¶ 35-37, 42.  Therefore, the Complaint's

allegations are sufficient to make a *prima facie* case that Bairstow committed a

tortious act in Florida within the meaning of Fla. Stat. § 48.193(1)(b).  This allegation, in addition to the Florida forum selection clause, bestows this Court personal jurisdiction over Bairstow.  Compl. ¶¶ 5, 12-16, 30-37, 49-52.

B.     *Constitutional Due Process*

After deciding that the long-arm statute provides a basis to assert personal jurisdiction over Bairstow, the Court must next determine whether the Due Process Clause of the Fourteenth Amendment allows in personam jurisdiction over her.  *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987).  In *International Shoe Co. v. Washington*, the Supreme Court articulated the due process requirement that in order to subject a defendant to personal jurisdiction, she must have certain "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice,'" 326 U.S. at 316 (internal citation omitted).  This analysis requires courts to determine whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hailed into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

However, because Bairstow contractually agreed to personal jurisdiction in Florida, the usual due process analysis need not be done.  As the United States Supreme Court noted in *Burger King*, the due process analysis is unnecessary where a nonresident defendant has consented to suit in a forum.  *Burger King Corp. v.*

*Rudzewicz,* 471 U.S. 462, 473 n.14 (1985).[5]  "[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) (quoting *National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316 (1964)); *see also Petrowski v. Hawkeye-Security Co.,* 350 U.S. 495 (1956).  The enforcement of an agreement conferring jurisdiction does not offend due process where the provision is freely negotiated and not unreasonable or unjust.  *See Burger King*, 471 U.S. at 472, 473 n.14; *see also The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).  Bairstow has not presented any argument or evidence that the Agreement was signed under duress or is unreasonable.  Accordingly, having contractually waived her due process right not to be subjected to suit in a forum where she might not have sufficient contacts, Bairstow cannot now assert that personal jurisdiction in Florida violates her due process rights.  *Alexander Proudfoot Co. World Headquarters v. Thayer,* 877 F.2d

---

[5]  The United States Supreme Court has noted that personal jurisdiction, unlike subject matter jurisdiction, may be conferred by agreement:

> We have noted that, because the personal jurisdiction requirement is a waivable right, there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court." (citation omitted).  For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. (citation omitted).  When such forum-selection provisions have been obtained through "freely negotiated" agreements and are not "unreasonable and unjust," (citation omitted) their enforcement does not offend due process.

*Burger King*, 471 U.S. at 473 n.14.

912, 921 (11th Cir. 1989).

**Defendant Advisors**

A.      *Long Arm Statute*

As discussed above, Plaintiff is proceeding against Defendants pursuant to Fla. Stat. § 48.193(1)(b) for having committed a tort outside the state that causes injury inside the state.  In 2008, the Eleventh Circuit held that allegations of trademark infringement of a Florida resident is sufficient to trigger this section of Florida's long-arm statute.  *Licciardello v. Lovelady,* 544 F.3d 1280, 1283-84 & n.2 (11th Cir. 2008). In a case involving a claim of trademark infringement arising from a website that was created outside of the state, the trademark infringement "occurred in Florida by virtue of the website's accessibility in Florida."  *Id*. (finding that music manager's website infringing on singer's copyright, through use of the singer's name and picture without authorization, caused tortious injury in Florida because website was accessible by Florida residents) (applying accessibility test, where defendant's offending website communication consisted of trademark infringement); *see also KVAR Energy Savings, Inc. v. Tri-State Energy Solutions*, 2009 WL 103645, at *11 (M.D. Fla. Jan. 15, 2009) (holding that specific jurisdiction under Section 48.193(1)(b) applies where website displays alleged trademark infringement and is accessible in Florida); *see also Richards v. Sen,* 2008 WL 4889623, at *4 (S.D. Fla. Nov. 12, 2008) (holding that tortious injury occurred in Florida where a patent application, which tortiously omitted inventor's name, was uploaded to a website accessible by Florida

residents).

Allegations of trademark infringement may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  In *Calder*, an allegedly libelous article about a Californian resident was published by a newspaper in Florida.  The article was deemed an "intentional and allegedly tortious act" expressly aimed at the plaintiff in California because the defendants knew their article would have a potentially devastating impact on the plaintiff in California.   Thus, California was the focal point of the tort and jurisdiction was proper there based on the "effects" in California of defendants' Florida conduct.  *Id*.  The Supreme Court concluded that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id*. at 790; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776-77 (1984) (affirming the exercise of jurisdiction over the nonresident defendant magazine alleged to have intentionally libeled the plaintiff in the forum noting that states have a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents).

Many courts have employed the *Calder* "effects" test when the plaintiff's claim involves an intentional tort.  *See, e.g., Exhibit Icons v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1298 (S.D. Fla. 2009) (Marra, J.).  Recently the Middle District of Florida recognized that "a number of courts" have held that "where a defendant's

tortuous conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum."  *New Lenox Industries v. Fenton*, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007).  In *New Lenox*, the plaintiff had alleged fraud and misappropriation of trade secrets, and the district court held that jurisdiction was proper inasmuch as "Plaintiff alleges that Defendants committed one or more intentional torts ... against Plaintiff who was injured in Florida."  *Id.* at 904-05 (citing *Godfrey v. Neumann,* 373 So.2d 920, 922 (Fla. 1979) (Florida Supreme Court similarly applied the "effects" test to find jurisdiction over the defendant alleged to have committed an intentional tort)).

In *Allerton v. State Dep't of Ins.*, 635 So.2d 36 (Fla. Dist. Ct. App. 1994), a Florida appellate court rejected an argument that neither the Florida long-arm statute nor the Constitution permitted the exercise of jurisdiction over a nonresident alleged to have committed fraud and breach of fiduciary duty causing injury in Florida, stating "[w]e do not believe that the Supreme Court [of Florida] intended ... to deprive a Florida plaintiff, injured by the intentional misconduct of a nonresident corporate employee expressly aimed at him, of the right to obtain personal jurisdiction over that employee in a Florida court."  *Id.* at 40.  The *Allerton* Court held that, because the defendant was alleged to have committed numerous intentional torts specifically aimed at a Florida resident, due process was satisfied under the *Calder* "effects" test.  *Id.*  The court concluded that the "quality and

nature of [the defendant's] actions were not so 'random, fortuitous or attenuated' that [he] could not reasonably anticipate being haled into court in Florida."  *Id.*

In this case, Advisors is alleged to have committed an intentional tort against Plaintiff - mark infringement and unfair competition, among others, - to induce and/or confuse the public to believe that Plaintiff is associated with or has endorsed Advisors.  Compl. ¶ 51.  The use was not negligent, but intentional.  The purpose was to make money from Plaintiff's implied endorsement.  The unauthorized use of Plaintiff's mark, therefore, individually targeted Plaintiff in order to misappropriate its name and reputation for commercial gain.  Florida is the focal point of the tort and jurisdiction is proper here based on the "effects" in Florida of Advisor's Colorado conduct.

B.     *Constitutional Due Process*

Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires that the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign.  *Burger King*, 471 U.S. at 472.  "This 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Licciardello*, 544 F.3d at 1284 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  In this way, the defendant could have reasonably anticipated being sued

in the forum's courts in connection with his activities there.  *Burger King Corp.*, 471

U.S. at 474.  "Jurisdiction is proper where the defendant's contacts with the forum

proximately result from actions by the defendant himself that create a 'substantial

connection' with the forum state."  *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir.

1990); *Brennan v. Roman Catholic Diocese of Syracuse New York, Inc.*. 322 Fed. Appx.

852, 855-856 (11th Cir. 2009).  The Constitution is not offended by the exercise of

Florida's long-arm statute to effect personal jurisdiction over Advisors because its

intentional conduct in Colorado was calculated to cause injury to Plaintiff in Florida.

*See Calder*, 465 U.S. at 791; *Licciardello v. Lovelady,* 544 F.3d 1280 (11th Cir. 2008).

Advisors cannot now claim surprise at being haled into court here.  *Calder*, 465 U.S.

at 789-90.  In addition, Bairstow has submitted an affidavit that admits Advisors

performed a small project for a rural hospital located in Florida.  This project

generated $5,500 in gross revenue for Advisors.  DE 15-1 at ¶34.  These facts

adequately satisfy the requirement that Advisors purposefully avail itself of the

privilege of conducting activities within Florida and that Advisor's contacts with

Florida relate to Plaintiff's cause of action.

**II.**     ***Forum Non Conveniens***

In their motions, Defendants argue that the Complaint should be dismissed on

*forum non conveniens* grounds.  According to Defendants, Colorado provides a much

more appropriate forum.

A federal court has discretion to dismiss a case on the ground of *forum non*

*conveniens* "when an alternative forum has jurisdiction to hear [the] case, and ...

trial in the chosen forum would establish ... oppressiveness and vexation to a

defendant ... out of all proportion to plaintiff's convenience, or ... the chosen forum

[is] inappropriate because of considerations affecting the court's own administrative

and legal problems." *American Dredging Co. v. Miller*, 510 U.S. 443, 447–448 (1994)

(quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).  Dismissal for *forum*

*non conveniens* reflects a court's assessment of a "range of considerations, most

notably the convenience to the parties and the practical difficulties that can attend

the adjudication of a dispute in a certain locality."  *Quackenbush v. Allstate Ins. Co.*,

517 U.S. 706, 723 (1996) (citations omitted).  The United States Supreme Court has

characterized *forum non conveniens* as, essentially, "a supervening venue provision,

permitting displacement of the ordinary rules of venue when, in light of certain

conditions, the trial court thinks that jurisdiction ought to be declined."  *Sinochem*

*Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 429-430 (2007)

quoting *American Dredging*, 510 U.S. at 453.

   As discussed above, in this case there is a Florida, Palm Beach County forum

selection clause in the contract at issue.  Forum selection clauses are "prima facie

valid and should be enforced unless enforcement is shown by the resisting party to be

'unreasonable' under the circumstances."  *Surgical Outcome Support, Inc. v. Plus*

*Consulting, LLC*, 2008 WL 2950151, *1 (S.D. Fla. Jul 31, 2008) (Marra, J.) citing *M/S*

*Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  Defendants have not argued

that this forum selection clause is unreasonable.  Therefore, it will be enforced and the motion to dismiss on *forum non conveniens* grounds is denied.

**III.    Shotgun Pleading**

Plaintiff has the burden to provide Defendants with a "short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).  "Shotgun" pleadings are those in which it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. District Bd. of Tr. of Cent. Florida Cmty Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).  Defendants assert the Complaint is "shotgun" because Plaintiff incorporates by reference every antecedent allegation into each count.  For example, Plaintiff alleges in paragraph 48 of Count II that: "Plaintiff re-alleges and incorporates the allegations in the foregoing paragraphs as if fully set forth herein."  Likewise, in paragraph 53 of Count III, paragraph 58 of Count IV and paragraph 69 of Count V, the Plaintiff also states that: "Plaintiff re-alleges and incorporates the allegations in the foregoing paragraphs as if fully set forth herein."  Defendants argue the Complaint should be dismissed because this style of pleading makes Counts II through V incomprehensible and impossible for Defendants to form a response.

The Court has reviewed the Complaint and finds its claims sufficiently definite to enable the Defendants to know with what they are charged, and they are reasonably able therefrom to respond whether they did the things charged.  Moreover, it is clear Defendants have discerned the basic facts that constitute the

claims for relief against them as evidenced by the content of the instant motions. The motion to dismiss due to shotgun pleading is denied.

## IV.    More Definite Statement Re: Misappropriate of Trade Secrets

As to its claim for misappropriation of trade secrets, Plaintiff alleges: "Upon information and belief, the services provided by Ms. Bairstow and Healthcare FMV involve the use and disclosure of all, or at least a substantial amount of, the Confidential Information[6] and Confidential Documents[7] constituting Plaintiff's proprietary trade secret information that was shared with Ms. Bairstow during her training and employment with Plaintiff." Compl. ¶ 34. Defendants argue that there are so many vaguely described categories of information that might be confidential but not necessarily trade secrets that they cannot comprehend what information is purported to be both a trade secret and at issue in this action as allegedly misappropriated by them. Defendants point out that this is not a request for specificity because they understand that due to the public nature of the filing of a complaint, Plaintiff need not provide specific details that would reveal the allegedly secret information that it is endeavoring to protect. Nevertheless, Defendants maintain that without a reasonable identification of the nature, character, and date of the Confidential Documents and Confidential Information, they cannot possibly conduct a reasonable investigation and prepare an informed response. Fed. R. Civ. P.

---

[6] *See supra* note 1.

[7] *See supra* note 2.

12(e).

The Court agrees with Plaintiff that discovery is the appropriate avenue

Defendants must pursue to resolve this issue.  The Complaint sufficiently apprises

Defendants of the trade secret claims against them to permit a response.  *See, e.g.*,

Compl. ¶¶ 11, 19.

**V.**     **Inability to Join a Necessary Party**

Bairstow argues that Plaintiff "named [Advisors], the owner of the allegedly

infringing mark, 'Healthcare FMV Advisors,' as a defendant to this lawsuit.  Thus,

[Plaintiff] recognized the necessity of [Advisor's] participation in this action and has

tried to join [Advisors].  However, as is evident from [Advisor's] Motion to Dismiss

(filed concurrently herewith), [Advisors] cannot be joined to this lawsuit due to this

Court's lack of personal jurisdiction over [Advisors]."  DE 15 at 11 of 17.

This argument presupposes that the Court will grant with prejudice Advisors

motion to dismiss on personal jurisdiction grounds, which obviously the Court has not

done.  Accordingly, this argument is rejected.

**VI.**    **Unjust Enrichment**

Count IV of the Complaint asserts a claim for misappropriation of trade secrets

in violation of Florida's Uniform Trade Secret Act, Fla. Stat. §688.002.  Compl. ¶¶58-

68.  Directly following that claim, Count V asserts a claim for unjust enrichment.

Bairstow asserts that the Uniform Trade Secrets Act preempts all tort claims that are

based or rely upon the allegation of the theft of a trade secret or other confidential

information.  *See, e.g., Penalty Kick Management Ltd. v. Coca Cola Co.*  318 F.3d

1284, 1298 (11ᵗʰ Cir. 2003) (*in the context of a summary judgment*, the plaintiff's

alternatively pleaded civil remedies were preempted under Georgia UTSA where the

plaintiff successfully established the information was misappropriated).

Again, the Court agrees with the Plaintiff that this argument is premature.  If

it is determined at a later time that there are no trade secrets, than it would follow

that the unjust enrichment claim would not be based on a misappropriation of trade

secrets and should not be displaced.  Therefore, this argument is more properly

asserted at summary judgment.  Dismissal of the unjust enrichment claim at this

juncture is denied.  Therefore, in accordance with the findings herein, it is hereby

ORDERED AND ADJUDGED that Healthcare FMV Advisors, LLC's Motion to Dismiss

Plaintiff's Complaint for Lack of Personal Jurisdiction, Forum Non-Conveniens, and

Violating Rules of Pleading [DE 14] is DENIED; Karen Bairstow's Motion to Dismiss

Complaint [DE 15] is DENIED; and Plaintiff's Motion for Leave to File a Brief Sur-Reply

to Defendants' Reply Memorandums [DE 30] is denied.[8]  The parties shall confer and

file their joint scheduling and discovery report within fifteen days of the date of this

---

[8] Plaintiff seeks to file a sur-reply claiming Defendants have raised a new issue
in their reply, namely a request to transfer venue.  Defendants argue against the sur-
reply asserting that they raised improper venue on the face of their respective
motions to dismiss.  The Court has addressed all arguments raised in Defendants'
motions so any sur-reply would be superfluous.

Order.

      DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County,

Florida, this 30th  day of September, 2011.

                                                                      KENNETH A. MARRA
                                                                   United States District Judge

copies to:

All counsel of record